UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

CORNELIUS WARE,

        Plaintiff,                    Case No. 1:23-cv-295

v.                                          Honorable Ray Kent

PETER E. SICES et al.,

        Defendants.
_____/

**OPINION**

      This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 5.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 6, PageID.57.)

      This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

      "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding

tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g., Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent

2

from the defendants. However, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.     Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Defendants Dr. Peter E. Sices, Registered Nurse (RN) Patrice Lamb, RN Carrie Williams, and Healthcare Secretary Eileen Cannon.

In his complaint, Plaintiff alleges that on March 2, 2022, he was examined by Defendant Sices, who advised him that he had Stage 4 Pancreatic Cancer and had one year to live. Defendant

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Sices then had Plaintiff sign and date a "Release of a Prisoner on Parole" form, which is utilized for a prisoner serving a term of life imprisonment without parole. (ECF No. 1, PageID.3.) The form requests that the Parole Board, the Governor, and/or the Attorney General grant a medical parole for a prisoner who has been determined to be medically frail. Plaintiff attaches a copy of his oncology report, which indicates that Plaintiff's case had been discussed with Dr. Oyasiji after he completed neoadjuvant chemotherapy to determine if he was a candidate for surgery. (*Id.*; ECF No. 1-2, PageID.17.) Plaintiff states that a request to grant medical parole "must be initiated on the recommendation of MDOC Health Care Services," and "if Health Care Services believes that the prisoner is medically frail, and was examined by a specialist in the appropriate field of medicine, who is not employed by the MDOC, to evaluate the condition of the prisoner and to report his findings to Health Care Services." (ECF No. 1, PageID.3.) In Plaintiff's case, the recommendation had to be initiated by Defendant Sices, and Plaintiff had been examined by a specialist, Dr. Oyasiji, who was not employed by the MDOC. Plaintiff waited for three months for a decision, and in June of 2022, Plaintiff sought a response from Defendant Sices regarding the status of his parole recommendation. "Healthcare Services" advised Plaintiff that the request had been sent out. (*Id.*)

In October of 2022, after waiting for seven months for a parole recommendation, Plaintiff received notice that the documentation had never been submitted to the Parole Board. On October 6, 2022, Plaintiff contacted Health Services to inform them of this fact. Defendant Cannon responded by stating that Defendant Sices's Parole Form had been misplaced and that a second set was submitted in August of 2022.

Plaintiff attaches a copy of an October 6, 2022, kite, in which he stated:

On 10-5-2022 I was not[]ified by the Attorney General office that nothing was sent to the parole board for communication once Dr. Peter Sices said that he sent in such

4

> paperwork on March 2, 2022 and August 31, 2022. So could you please take a look into this very serious matter. Thank You Please send back notification of this request!!! I need a copy of the paper I signed March 2, 2022 & Aug. 31, 2022.

(ECF No. 1-3, PageID.21.) In response, Defendant Cannon advised Plaintiff:

> Mr. Ware, the paperwork was sent to the appropriate people for both of those dates. Unfortunately, the initial set that was sent in March 2022 was misplaced. So, we had you sign a 2nd set and that paperwork for Aug 2022 was submitted to the appropriate people in Lansing and will be moved up the chain from there. That is all I can tell you at this point.

(*Id.*) Plaintiff also attaches a copy of a October 11, 2022, kite response, in which he stated:

> two requests received - On March 2, 2022, I was called to health care by medical provider Peter Sices, informed me that I had stage 4 pancreatic cancer and I signed several documents in his presence, Doctor Sices also signed the same documents. The documents were pertaining to follow up c[are] and a medical commutation. "I would like a copy of all documentation with my signature on it dated March 2nd and August 31, 2022, and I would like a copy of this request showing that you received it!!
>
> E[i]leen Cannon said that the papers that I signed on August 31, 2022 which was redone from March 2, 2022 was sent off to the appropriate people in Lansing now who is these people and what is their address?? Because my people contacted Lansing and they said that they "have not" received anything from this facility pertaining to me!!! I would like a response to this request on paper ASAP Thank You.

(*Id.*, PageID.22.) In response, Defendant Williams stated:

> Thank you for checking into this. I then further checked into it. Per MDOC ACMO, the Parole Board Medical Status Report was forwarded to the parole board on 10/7/22. In regards to the one that was filled out in March 2022, while I did not work at this facility until May 2022 and the previous HUM is not available for contact, upon your inquiry, I was able to locate the original and have now forwarded that to the appropriate parties to be put on file with your most recent one from August. While it is unfortunate that the one from March was not forwarded timely, I have done my best to remedy this situation. Please let me know if you have any future concerns --- HUM Williams.

(*Id.*)

Additionally, Plaintiff attaches a copy of his step I grievance and the step I response. In the response, which is dated November 2, 2022, respondent A. Gaskill (not a party) set forth the investigation summary:

> The electronic medical record has been reviewed. Grievant not interviewed because his description allows for a response from the electronic medical record. In June 2022 the grievant kited health care inquiring if his Medical Status Report had been submitted to the parole board. He was advised that it had been but then on 10/6/22 the grievant kited health care with information that he was informed by the attorney general that the parole board had not received anything. The grievant was brought to health care [i]n August and asked to sign a second set for paperwork and was then forwarded to the appropriate parties at that time. This matter is considered resolved.

(ECF No. 1-5, PageID.26.)

> In the decision summary, A. Gaskill stated:
>
> Per the above, the initial set of paperwork for parole board that was thought to have been sent in March 2022 was misplaced so a second set was signed by the grievant in August and has since been forwarded to the parole board. A mistake was identified and corrected as soon as possible.

(*Id.*)

Plaintiff filed a step II appeal, which was responded to by Defendant Lamb on December 9, 2022. (ECF No. 1-6.) In the response, Defendant Lamb states:

> Grievant claims that ICF Health Care failed to follow proper procedure re: submission of documentation related to his request for medical commutation/parole. Grievant indicates that the process was initiated when he was given a diagnosis of terminal cancer in March 2022. Grievant states that he was later told that the initial documentation had been misplaced; it was completed again in August. He claims that subsequent submission of that documentation to the Parole Board was further delayed. The documents did not reach the Parole Board until October. At Step II grievant writes, "I want to die in peace, and this (or these) individual(s) have essentially ensured I will have no peace because the medical commutation process is now 7 months late, and I was only given a year to live."
>
> Per the Step I response, the initial "Medical Status Report" (presumably completed in March 2022) was misplaced. The documentation was completed again in August and was subsequently submitted to the Parole Board.

6

> Grievant's concern re: this issue is acknowledged and understood. This matter has been referred to ICF Health Care and select BHCS leadership staff for administrative review and any further action deemed necessary. No further remedy may be offered at this time.
>
> Grievance resolved.

(*Id.*, PageID.29.)

Plaintiff also attaches a copy of a letter from the Michigan Parole Board dated January 26, 2023, stating that it had received Plaintiff's application for pardon or commutation of sentence on January 5, 2023, and that it was currently under review. (ECF No. 1-8.)

Plaintiff states that Defendants violated his rights under the Eighth Amendment. Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

7

misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915€(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). In this action, Plaintiff alleges that Defendants violated his Eighth Amendment rights. (ECF No. 1, PageID.6.) The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine

discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

In this case, Plaintiff claims that Defendants failed to follow proper procedure when they initially submitted documentation related to his request for medical commutation/parole. Consequently, Plaintiff's request for medical commutation/parole was not submitted in a timely

9

manner, and Plaintiff alleges that he has spent months in prison after he was only given a year to live.

The Court notes that Plaintiff's continued incarceration while terminally ill does not violate the Eighth Amendment. "Although the incarceration of a terminally ill prisoner may be 'cruel,' it is not 'unusual.'" *See Engle v. United States*, 26 F. App'x 394, 397 (6th Cir. 2001) (citing *Harmelin v. Michigan*, 501 U.S. 957, 994 (1991)) (discussing that severe, mandatory penalties are cruel, but not unusual). Therefore, the failure to properly submit the request for commutation/parole did not violate the Eighth Amendment.[2]

Moreover, Plaintiff's allegations against Defendants describe conduct which is, at most, negligent. The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

---

[2] Furthermore, the Court notes that there is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). And, the Michigan system does not create a liberty interest in parole. *Sweeton v. Brown*, 27 F.3d 1162, 1164–65 (6th Cir. 1994) (en banc). Additionally, § 1983 does not provide redress for a violation of prison policy. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton*, 27 F.3d at 1166.

In this case, Plaintiff's allegations and the exhibits attached to his complaint show that Defendants mistakenly thought the request for medical commutation/parole on Plaintiff's behalf had been properly submitted.[3] Once the mistake was discovered, Defendants resubmitted the request for medical commutation/parole, which is currently under consideration by the Parole Board. Under the circumstances alleged by Plaintiff, he has failed to show that Defendants acted with deliberate indifference. *See Farmer*, 511 U.S. at 835 (holding that an Eighth Amendment violation requires a "state of mind more blameworthy than negligence").

Therefore, for the reasons set forth above, Plaintiff's complaint against the Defendants for violating his Eighth Amendment rights is properly dismissed.

## III. Motion for Evidentiary Hearing

Plaintiff has filed a motion for an evidentiary hearing (ECF No. 3) for the purpose of determining how the case will proceed against Defendant Corizon employees Sices, Lamb, Williams, and Cannon, in light of Corizon's bankruptcy action. However, because Plaintiff has failed to state a claim against the Defendants, his motion is properly denied as moot.

---

[3] To the extent that Plaintiff faults any of the named Defendants for their responses to his grievances or kites, the Sixth Circuit has held that where the defendant's only involvement in the allegedly unconstitutional conduct is "the denial of administrative grievances or the failure to act," the defendant cannot be liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). The reason is that there must be active unconstitutional behavior. Failing to intervene on a prisoner's behalf to remedy alleged unconstitutional behavior does not amount to active unconstitutional behavior by a person who merely denies an administrative grievance. *Id.* Additionally, in unpublished decisions, the Sixth Circuit has held that a prisoner's allegation that a defendant improperly denied, or responded to, a grievance is not a claim of constitutional dimension because there is "no inherent constitutional right to an effective prison grievance procedure." *See Overholt v. Unibase Data Entry, Inc.*, No. 98-3302, 2000 WL 799760, at *3 (6th Cir. June 14, 2000); *Lyle v. Stahl*, No. 97-2007, 1998 WL 476189, at *1 (6th Cir. Aug. 3, 1998); *see also Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994) (discussing that there is no constitutional right to a grievance procedure); *see also, e.g.*, *Hewitt v. Helms*, 459 U.S. 460, 467 (1983) (discussing that there is no constitutionally protected due process right to an effective prison grievance procedure); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003).

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's motion for evidentiary hearing (ECF No. 3) will be denied as moot. The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

An order and judgment consistent with this opinion will be entered.

Dated:  May 10, 2023                                   /s/ Ray Kent
                                                       Ray Kent
                                                       United States Magistrate Judge

12